# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|                                        |     |                      |
|----------------------------------------|-----|----------------------|
| **KOSOL TEVES**,                       | )   |                      |
|                                        | )   |                      |
| **Plaintiff**                          | )   |                      |
|                                        | )   |                      |
| **v.**                                 | )   | **Civil No. 08-246-B-W** |
|                                        | )   |                      |
| **MICHAEL J. ASTRUE,**                 | )   |                      |
| **Commissioner of Social Security,**   | )   |                      |
|                                        | )   |                      |
| **Defendant**                          | )   |                      |

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge should have found her mental impairment and diabetes to be severe impairments, and failed to treat properly the opinion of a state consultant who did not examine her. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff remained insured for purposes of SSD benefits only through December 31, 1995, Finding 1, Record at 18; that her statements concerning her impairments and their impact on her ability to work at the relevant time were not entirely credible, Finding 3, *id*.; that at the relevant time she did not have any

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 20, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

severe impairment, Finding 4, *id*.; and that she accordingly was not under a disability, as that term is defined by the Social Security Act, at any time through the date last insured, Finding 5, *id*. at 18-19.  The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The appeal implicates Step 2 of the sequential process, at which stage the plaintiff bears the burden of proof.  However, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id*. at 1124 (quoting Social Security Ruling 85-28).

### Discussion

### A.  Existence of Mental Impairment

The plaintiff begins by asserting that the administrative law judge was required to use the special psychiatric technique mandated by 20 C.F.R. § 404.1520a(e) before he could conclude

that she did not suffer from any mental impairment at the relevant time.  Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2-3.  But that is not quite accurate.  Use of the technique is mandated only after the administrative law judge has determined that a mental impairment existed at the relevant time.  20 C.F.R. § 404.1520(b).  If the administrative law judge determines, after evaluating the claimant's symptoms, signs, and laboratory findings, that the claimant had a medically determinable mental impairment at the relevant time, then the technique must be used and documented.  But, in this case, the administrative law judge determined that the plaintiff did not have a medically determinable mental impairment at the relevant time.  Record at 18.  If this conclusion is correct, his failure to apply the special technique is not error.

The plaintiff points to the following as evidence of the existence of an impairment before December 31, 1995:

> The record shows evidence of two hospitalizations in 1990 and 1991 for treatment of major depression with psychotic features (including auditory hallucinations).  (R. 91-96, 97-104).  Following her discharge in 1991, the Plaintiff continued as an outpatient at a mental health clinic through and following the date she was last insured. (R. 126-201). . . .

> Treatment notes from late 1995 indicate that the Plaintiff was taking her medications "erratically" because she could not afford them. (R. 177, 176).  Her testimony at hearing was that she heard voices while working as a housekeeper and was laid off.  "I start to hear thing and people going to take me and hurt me unless I stop to work and I don't stop exactly . . . . [S]he give me a pink slip for lay[]off. . . ." (R. 410).  She also said she had to quit a job in a fish factory because "I hear things that job."  (R. 411).

> This last allegation was picked up by one of her mental health providers in a March, 1996, progress note . . . . (R. 175).  The provider, NP Cooper, responded to this presentation by increasing the Plaintiff's dosage of Stelazine.  (R. 175).

> The evidence at the end of 1995 suggests a flare[-up] of the Plaintiff's psychotic symptomatology.  There is certainly sufficient evidence to

3

conclude that the symptoms referenced in NP Cooper's March, 1996, progress note related back to the previous December, if not earlier, when the Plaintiff was doing her fish factory job and, as well, during a period when the Plaintiff was unable to take her medications on a regular basis because of financial reasons.

Itemized Statement at 3-4 (footnotes omitted).

The administrative law judge did not ignore this information.  He wrote:

> The record shows that Ms. Teves was hospitalized in 1990 and 1991 for treatment of major depression with psychotic features (Exhibits 1F, 2F). Records from Kennebec Valley Mental Health Center, however, show that the claimant experienced significant improvement in her symptomology by the time of her alleged onset date (Exhibit 7F).  In June, 1995, Ms. Teves was working full-time and indicated that she felt "wonderful."  In September, she was looking for work, and her condition was deemed to be stable.  In December, the month in which she alleges she became disabled, KVMHC records show that, despite taking prescribed medication only sporadically, Ms. Teves denied being depressed and was looking for work.  The notes also describe the claimant as pleasant, cooperative, and in good spirits.  Furthermore, they indicate that she had no difficulties engaging in activities of daily living.
>
> * * *
>
> [T]he more recent records do not speak to the issue of the claimant's medical condition as of December, 1995.  The contemporaneous medical documentation, which incorporates Ms. Teves's own statements regarding the state of her health and her functional capacity, shows that she was not suffering from any severe impairment at that time.

Record at 17-18.

The administrative law judge was not required to assume that symptoms reported in March 1996 demonstrated the existence of a mental impairment in December 1995, particularly when the treating professional recording those symptoms said nothing about their existence at the earlier date.   Indeed, the same treating professional, N.P. Cooper, recorded on December 14, 1995, that the plaintiff "denies feeling depressed.  Mood is stable, denies thoughts of self harm or harm to others . . . . Patient has no job but is looking and would like housekeeping duties. . . . A[ctivities of] D[aily] L[iving] are excellent.  In good spirits."  *Id*. at 177.   The same treating

professional recorded on June 8, 1995, that the patient reported feeling "wonderful" and that there was "[n]o evidence of depression." *Id*. at 179.  In September 1995, at the plaintiff's next scheduled appointment, the treating professional reported that the plaintiff was "stable on" medication.  *Id*. at 178.  These are some of the notes to which the administrative law judge referred.   The plaintiff herself testified that she could have worked full-time as a housekeeper in 1995.  *Id*. at 413.

As the plaintiff points out, Itemized Statement at 4, she did report in 2002 that she worked in a fish factory for one month in 1995, Record at 58,  and she testified that she heard voices while she worked in the fish factory, *id*. at 410, but she cites nothing that indicates that this took place in December of 1995, her alleged onset date, *id*. at 16.  Contrary to her attorney's suggestion, Itemized Statement at 4, the plaintiff's testimony need not necessarily be read to say that she heard voices while working as a housekeeper and was laid off as a result, Record at 410, but even read that way, the plaintiff reported that she stopped working as a housekeeper in 1994, *id*. at 58.

The best evidence of the plaintiff's mental condition in December 1995 is the notes made by her treating professional at that time.  There is no need, and it certainly cannot be required, that the administrative law judge ignore that evidence in order to draw inferences from records dated several months later or at some unknown prior point in time.

### B.  Dr. Houston's Evaluations

The plaintiff next contends that the administrative law judge failed to compare an assessment of mental residual functional capacity performed by a non-examining state-agency psychologist, David R. Houston, Ph.D., dated July 13, 1996, and finding the plaintiff to be suffering from the severe impairment of depression at that time, with another assessment by the

same psychologist dated November 12, 2002, finding that any mental impairment was not severe before the date last insured in 1995. Itemized Statement at 5-6. Because the administrative law judge found that there was no mental impairment as of the date last insured, and that conclusion is supported by substantial evidence in the record, there is no need to consider this issue. However, I do note that Dr. Houston's 1996 evaluation did not deal with the question of whether the impairment that he found to be severe in 1996, when the plaintiff agrees that her condition had deteriorated since her date last insured, Itemized Statement at 4, also existed in December 1995, which was the question posed for his 2002 evaluation.

### C. The Plaintiff's Diabetes

The plaintiff next contends that the administrative law judge's conclusion that her diabetes was not a severe impairment as of December 31, 1995, is an error requiring remand. *Id.* at 6-7. She relies on the following evidence:

> Dr. Miller, her primary care physician, stated in January, 1996, that the Plaintiff complained that she had tried working in a fish factory but standing was one of her major problems, a nail on her right foot causing inflammation and swelling. He said he "agreed that she cannot work at a job involving standing much, that the risk of damaging her diabetic feet is too high." (emphasis supplied)(R. 241).

*Id.* at 6 (emphasis in original).

The note cited by the plaintiff is dated January 24, 1996. Record at 241. The same doctor reports, in a note dated December 18, 1995:

> Kosol is doing very well with her diabetes. She is taking metformin twice a day and the tolazamide twice a day. . . . Diabetes appears under better control. She will be returning to work soon. Therefore, I will make no other change in therapy at this point.

*Id.* The administrative law judge noted this report in the course of his discussion of the plaintiff's diabetes:

> Ms. Teves was diagnosed with non-insulin-dependent diabetes in 1994 (Exhibit 8F). Treating source notes from December, 1995 show that she was "doing very well" with respect to her diabetes. Notes from January, 1996 state that her blood sugars looked "great," and that she was "feeling good." Although those notes indicate that Ms. Teves had recently quit working at a fish processing plant because her feet hurt from standing too much, the evidence does not show that she had any significant restrictions on her ability to work as of December 31, 1995. Treating physician notes from March, 1996 state that the claimant was looking for work as a maid, which is clearly inconsistent with her allegation that she has been disabled since December, 1995.

*Id*. at 18.

The Step 2 test, where the plaintiff has the burden, is a *de minimis* one. Still, the plaintiff must demonstrate that the impairment at issue significantly limited her ability to do basic work activity at the relevant time. *Bowen v. Yuckert*, 482 U.S. 137, 145-46 (1987). The only evidence cited by counsel for the plaintiff on this point at oral argument was the plaintiff's own report that she left a job after one month in 1995 because of foot pain, Record at 58, and her treating physician's January 1996 note, *id*. at 241, suggesting that the month at issue was December 1995. As counsel for the commissioner noted at oral argument, while this note does suggest that the foot pain was related to the plaintiff's diabetes, it merely records the plaintiff's own report as to the severity of that symptom, but a claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence. *Duckworth-Bubar v. Barnhart*, 242 F.Supp.2d 30, 32 (D. Me. 2002). In addition, the note records that the irritation, inflammation and swelling had gone down by January 24, 1996, that the foot was healing, and that there was "[n]o active inflammation at this point[,]" suggesting that the foot pain was greatly improved. The administrative law judge's analysis of the medical evidence concerning the plaintiff's diabetes was sufficient at Step 2.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be AFFIRMED.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of April, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge